UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD D.,[1]

      **Plaintiff,**

  v.                            Civil Action 2:23-cv-697
                                    Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Ronald D. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Period of Disability and Disability Insurance benefits. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the undersigned for a ruling on Plaintiff's Statement of Specific Errors (ECF No. 9), the Acting Commissioner's Memorandum in Opposition (ECF No. 10), and the administrative record (ECF No. 7). Plaintiff did not file a reply memorandum. For the reasons that follow, Plaintiff's Statement of Specific Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.    BACKGROUND

Plaintiff protectively filed his application for Title II period of disability and disability insurance and an application for Title XVI supplemental security income benefits on September 18, 2020, alleging that he became disabled on August 17, 2015. Plaintiff received an award on his Title XVI application at the initial level in February 2021, with a determination that his disability began on February 2, 2021, when he turned age 55. Plaintiff's application for Title II period of disability and disability insurance, however, was denied at the initial and reconsideration levels. An administrative law judge ("ALJ") held a telephone hearing on February 17, 2022, and issued an unfavorable determination on May 26, 2022. That unfavorable determination became final on December 15, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts one contention of error: the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence (specifically related to significant injuries and trauma Plaintiff suffered as a result of being stabbed multiple times in January 2015). (Pl.'s Statement of Specific Errors 4–10, ECF No. 9.) The undersigned disagrees.

## II.    THE ALJ'S DECISION

On May 26, 2022, the ALJ issued her decision. The ALJ determined that Plaintiff's earnings record shows sufficient quarters of coverage to remain insured through December 31, 2017 (the "date of last insured") (R. 14) and found that Plaintiff had not been disabled within the meaning of the Social Security Act from August 17, 2015, the date he alleged that he had become disabled, through the date of last insured. (*Id*. at 13–28.) At step one of the

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity from the alleged onset date through his date of last insured. (*Id.* at 16.) At step two, the ALJ found that through the date of last insured, Plaintiff had the following severe impairments: residuals of multiple traumatic stab wounds, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease, carpal tunnel syndrome, brachial plexopathy, and incisional/ventral hernia with surgery and mesh replacement. (*Id.* at 16.) The ALJ also found that Plaintiff had the following non-severe impairments during the relevant time period: gastroesophageal reflux disease ("GERD") and pancolitis. (*Id.* at 16–17.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 17–18.) The ALJ then set forth Plaintiff's RFC through the date of last insured as follows:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: He could occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop,

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

>kneel, and crouch, but can never crawl. He could tolerate only occasional exposure to extreme cold, heat, and vibration. He must have avoided all workplace hazards such as moving machinery and unprotected heights.

(*Id.* at 18–19.)

The ALJ then determined at step four that that Plaintiff was unable to perform any past relevant work as a machinist or pipefitter through the date of last insured. (*Id.* at 26.) At step five, the ALJ, relying upon a vocational expert, found that through the date of last insured, jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity would have been able to perform, with representative occupations being information clerk, routing clerk, and mail sorter. (*Id.* at 26–28.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 28.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr. v. Sec'y of Health &*

*Human Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff asserts that "the ALJ failed to adequately consider the full ramifications of the severe trauma [Plaintiff] experienced due to being stabbed multiple times and … relied on an incomplete medical record in making her determination, erroneously substituting her own lay opinion." (Pl.'s Statement of Specific Errors 6, ECF No. 9.) The undersigned considers Plaintiff's contentions below.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c). The determination of a claimant's RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity."). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a

5

whole. 42 U.S.C. §§ 423(d)(5)(B). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC. *Id.* at *7.

### A. The ALJ adequately addressed any residual effects from the attack on Plaintiff in determining Plaintiff's RFC.

Approximately seven months prior to Plaintiff's alleged onset date of disability, Plaintiff suffered severe trauma when he was attacked and stabbed multiple times. Plaintiff asserts that "the ALJ completely disregarded the physical and mental impact that getting stabbed 26 times would have on a person . . . . The ALJ erred by failing to incorporate these consequences into Mr. Davis's RFC assessment." (*Id.* at 6.) The undersigned disagrees. The ALJ specifically noted and explained that:

> Plaintiff was the victim of a physical attack in January 2015 . . . which resulted in multiple traumatic stab wounds to his chest, neck and back with associated left-sided pneumothorax. The [Plaintiff] initially required inpatient admission, as well as an exploratory laparotomy and right neck wound exploration with closure of his neck lacerations. Although [Plaintiff's] records note additional wound excision flowing suture removal, they do not evidence any further issues with his initial healing such as delayed wound healing or persistent pneumothorax.
>
> However, as pertinent to the period at issue, *the record does document residual complications of his injuries, namely brachial plexopathy and an incisional hernia. It also evidences residual symptoms reported during the period at issue, including those related to brachial plexopathy, such as neck pain and numbness and tingling in the right upper extremity, which overlap with the claimant's spine conditions and carpal tunnel syndrome* (See infra). *Therefore, the residual factors from the claimant's stabbing injury are considered within the context of those additional relevant impairments below.*

> As referenced above, the medical evidence of record establishes severe medically determinable impairment of degenerative disc disease of the cervical spine, which involves a history of fusion surgery, as well as carpal tunnel syndrome and brachial plexopathy. Regarding these conditions, *and the claimant's history of traumatic stab wounds*, the record reflects reported symptoms such as neck pain with radiation down the right arm, intrascapular pain, numbness and tingling in the right hand and at the first through fourth digits, mid thoracic pain, general muscular weakness, right arm and hand weakness, and occasional imbalance, but with no reported use of an assistive device.

(R. 20) (emphasis added).

The ALJ reviewed the medical records—both before and during the alleged disability period—concerning Plaintiff's brachial plexography and incisional hernia. The ALJ noted a March 2015 electrodiagnostic study of Plaintiff's upper extremities which indicated "a right median neuropathy at the wrist (carpal tunnel syndrome) and probably right brachial plexopathy; however, both findings were characterized as mild and without denervation." (*Id.* at 21.) The ALJ also reviewed an April 2015 MRI of Plaintiff's brachial plexus that was "essentially normal, including no evidence of a lesion." (*Id.*) The ALJ noted that an examination of Plaintiff in July 2015, still before the alleged onset date of Plaintiff's disability, "did not evidence any pertinent abnormalities, including normal findings regarding the neck, range of motion, stability, and muscle strength/tone." (*Id.* at 22.) The ALJ then noted that an examination of Plaintiff in March 2016, within the alleged period of disability, "documented findings of a normal gait and grossly intact strength and sensation," and "a review of symptoms at that time was also negative for back, neck or muscle pain." (*Id.*) The ALJ also pointed to a record of an examination of Plaintiff in August 2016, which "demonstrate findings of no limitations in neck range of motion, no vertebral tenderness in the back, normal range of motion in the extremities, and no sensory defects. Similar to the prior examination of March 2016, neck pain was denied at the time, as was weakness." (*Id.*)

7

Turning to the other physical effects of the attack on Plaintiff, the ALJ noted "as a result of the exploratory laparotomy performed at the time of his stabbing injuries, [Plaintiff] developed a large incisional/ventral hernia which is first discussed in the available records in July 2015" (*Id.* at 23.) At that time, "Plaintiff reported pain and limitations in his quality of life, with an inability to take part in active physical activities as a result of this condition." (*Id.*) Plaintiff had surgery to repair of his incisional hernia with mesh insertion August 18, 2015 (the day after Plaintiff's claimed date of onset of disability). (*Id.*) The records do not show complications with that surgery, and Plaintiff was discharged in stable condition. In November 2015, a CT scan of Plaintiff's abdomen/pelvis "revealed stable postoperative findings without abscess or seroma." (*Id.*) The ALJ further noted that in March 2016, Plaintiff reported ongoing pain since his surgery, however "an examination was unremarkable, with no tenderness, masses, or organomegaly. [Plaintiff's] pain was suspected to be post-surgical / abdominal wall, related . . . . Although it appears that an ultrasound and esophagogastroduodenoscopy were ordered, there is no evidence of testing or follow up treatment notes for any such procedures." (*Id.*) "An August 2016 abdominal CT scan was unremarkable for relevant findings." (*Id.*) At that time, however, a physical examination revealed "abdominal tenderness … related to pancolitis, with no apparent hernia noted within the findings." (*Id.*) Notes from that CT scan state that Plaintiff had "diffuse colitis consisting of edema of the colon from the ileocecal valve to the rectum," and "[t]hese findings were not seen on the exam from 11/6/2015." (R. 459.) There were no further medical records for the sixteen-month period from August 2016 to the last date of insured, December 31, 2017.

Contrary to Plaintiff's assertions, the ALJ expressly took into account the physical injuries Plaintiff suffered during the attack when determining that Plaintiff would be restricted to less than the full range of light work:

> Overall, the medical evidence of record reasonably supports that the claimant had functional limitations related to the above severe medically determinable impairments during the period at issue that would have restricted him to less than the full range of light work. This includes the additional limitations detailed in the residual functional capacity assessment above regarding climbing, performing postural activities (i.e., balancing, stooping, kneeling, crouching, and crawling), and tolerating exposure to certain environments, including extreme cold, heat, and vibration, as well as workplace hazards such as moving machinery and unprotected heights.
>
> These limitations are reasonably supported by the documented objective medical evidence of record, including imaging findings such as a disc-spur complex and foraminal stenosis at the C3-C4 level, increased uncovertebral hypertrophy at the C4-C5 level, a disc protrusion at the C6-C7 level, narrowing of the lumbar discs, and degenerative changes in in the right thumb, as well as electrodiagnostic evidence of right median neuropathy at the wrist *and probably brachial plexopathy* (See supra). *This supportive evidence further includes the, albeit limited, physical examination findings of reduced sensation and strength in the right upper extremity*, decreased range of motion in the spine, and *right upper extremity atrophy*, *as well as the claimant's large incisional/ventral hernia that required surgical intervention* and his history of cervical spine fusion surgery, right thumb ORIF surgery, and pain injections (*See supra*).

(*Id*. at 22–23) (emphasis added).

Plaintiff also argues that the ALJ clearly erred by failing to take into account the psychological impact resulting from the attack. (Pl's Statement of Specific Errors 6, ECF No. 9.) The undersigned disagrees. Plaintiff bears the burden of proof at steps one through four of the five-step analysis, including bearing the burden of proof as to his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("[I]t is not unfair to require a claimant to prove the extent of his impairments.") (*citing Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). There are no medical records showing that Plaintiff had been treated for any mental health issues resulting from the attack. At the hearing, the ALJ recognized that trauma resulting from the stabbing

attack on Plaintiff may have caused lingering psychological effects and asked Plaintiff if he had "any particular mental health conditions that resulted after" the attack. (R. 51.) Plaintiff replied "Not that I went to see a doctor for." (*Id.*) The ALJ then probed further and asked Plaintiff if he would like the opportunity to go a Social Security psychologist or mental health provider to develop further the record regarding any psychological effects resulting from the attack (R. 51–52), but Plaintiff did not take the opportunity offered by the ALJ. (*Id.* at 52-53.) With a dearth of objective medical evidence as to Plaintiff's mental health during the Title II period and no specific claim by Plaintiff that he was limited by mental health issues, there was no error by the ALJ in not including any limitations based upon the alleged mental or psychological impact of the attack on Plaintiff in the RFC determination.

  **B. The ALJ did not improperly substitute her lay opinion for that of medical experts in determining Plaintiff's RFC.**

Plaintiff argues that in determining Plaintiff's RFC, the ALJ substituted her own lay opinion for that of medical experts. (Pl.'s Statement of Specific Errors 7–10, ECF No. 9.) Plaintiff suggests that the ALJ "should have further developed the record by obtaining a consultative examination or seeking out [Plaintiff's] treating physician for more information" (*id.* at 7) and requests that the case be remanded for further proceedings. (*Id.* at 10.) The undersigned disagrees.

First, the premise of Plaintiff's argument on this point is incorrect. The ALJ, not medical sources, has the final responsibility for deciding issues like residual functional capacity. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (upholding Commissioner's decision where plaintiff

10

"contend[ed] that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion," finding "the premise" of that position "is wrong"). The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their supportability, with reference to objective medical evidence and supporting explanations, and their consistency with other medical and non-medical source evidence. 20 C.F.R. § 1520c(c)(1)–(2). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

Second, Plaintiff's suggestions for why the case should be remanded—for a consultative examination or the seeking out Plaintiff's treating physician for additional information—do not show error by the ALJ. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917.) After Plaintiff applied for benefits, the Social Security Agency did send Plaintiff to a consultative examiner, Stephen Nutter, M.D., who examined Plaintiff on January 21, 2021. (R. 471–80.) In his report following that examination, Dr. Nutter concluded that "[t]he limitations encountered during the exam make it very difficult to assess or predict residual functional capacity." (*Id.* at 474.) On January 28, 2021, Rannie Amiri, M.D. reviewed Plaintiff's then-available medical records, which included the results of Dr. Nutter's examination. (*Id.* at 73–74.) Dr. Amiri (misidentified as Dr. Koch by the ALJ (*id.* at 25)), concluded that as of September 18, 2020, Plaintiff would be limited to work in the light

11

exertional range,³ but also concluded that there was insufficient evidence to make a determination of Plaintiff's RFC during the Title II period, from August 17, 2015, through December 31, 2017. (*Id.* at 25, 74–77.) In July 2021, upon reconsideration, Stephen Koch, M.D., reviewed the available medical records and also concluded that there was insufficient evidence to determine Plaintiff's ability to do work during from August 17, 2015, through December 31, 2017. (*Id.*) Plaintiff offers no explanation for why a second consultative examination, now more than six years after the date he was last insured, would shed additional, reliable light on his RFC from August 2015 through December 2017.

During the hearing, the ALJ identified the medical records that were in the record, and asked Plaintiff if there were any additional records from the period before December 31, 2017, that the ALJ did not have. (*Id.* at 45–46.) Plaintiff identified a Dr. Mike Shramowiat as a treating physician and explained that he had not been able to get records from Dr. Shramowiat. (*Id.* at 46-47.) Following the hearing, the state agency attempted to obtain records from Dr. Shramowiat, but that those attempts were unsuccessful. (*Id.* at 20, 517–24.) The state agency requested Plaintiff's medical records on March 1, 2022 (*id.* at 517–521) and having no response, sent a second request on March 15, 2022. (*Id.* at 524.) *See* § 404.1512(b)(1) & (b)(1)(i) ("Before we make a determination that you are not disabled …. [w]e will make every reasonable effort to help you get medical evidence from your own medical sources." "Every reasonable effort means that we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been

---

³ In determining that Plaintiff was disabled for purposes of his SSI application, Plaintiff was found to be disabled as of February 2, 201, when he turned age 55 and moved into the "person of advanced age" category under Medical-Vocational Guidelines Rule 202.06. (R. 86.) *See* 20 C.F.R. § 416.963(e).

12

received, we will make one follow-up request to obtain the medical evidence necessary to make a determination.").

Plaintiff has not identified any evidence, other than the records from Dr. Shramowiat, that might support his claim. Plaintiff does not identify anything specific in the records from Dr. Shramowiat that would cast doubt on the ALJ's RFC determination. Finally, Plaintiff offers no basis to believe that the records from Dr. Shramowiat have been, or might be, obtained. Thus, he offers no legal or factual basis to assert error by the ALJ because of alleged deficiencies in the record or to argue that the case should be remanded to further develop the record. *Cf.* 20 C.F.R. § 404.1520b(b)(3) ("When . . . the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based upon the evidence we have.")

**C.     The ALJ's RFC determination is supported by substantial evidence.**

The ALJ found that through the date of last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with some additional limitations. (*R*. at 18–19.) Plaintiff does not identify any specific limitation he has that is inconsistent with the ALJ's conclusion. The ALJ did find that Plaintiff had several impairments, including: residuals of multiple traumatic stab wounds, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease, carpal tunnel syndrome, brachial plexopathy, incisional/ventral hernia with surgery and mesh replacement, GERD and pancolitis. (R. 16.) But the ALJ also determined that "[Plaintiff's] allegations of debilitating impairments are inconsistent with physical examination findings, imaging, and his overall treatment history during the period at issue." (*Id.* at 20.)

An ALJ must "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Snyder v. Comm'r of Soc. Sec.*, 2023 WL

13

3673265, at *5 (6th Cir. May 26, 2023) (quoting SSR 16-3p, 2016 WL 1119029, at *6 (Mar. 16, 2016)). The Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the location, duration, frequency and intensity of pain; factors that precipitate or aggravate symptoms; the effectiveness and side effects of medications; treatments other than medication; and any measures used to relieve pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p, 2016 WL 119029, at *7.

In evaluating Plaintiff's impairments, the ALJ identified evidence from the medical records that is consistent with her RFC determination. The ALJ noted that the record during the relevant period does note "chronic back pain and numbness … however this largely appears only incidentally within listings of the claimant's past medical history. Moreover, back pain is generally not reported or is even denied." (R. at 20.) An MRI of Plaintiff's cervical spine in 2015 resulting in mild findings, showing no significant stenosis and no neural impingement. (*Id.*) "An August 2016 abdominal/pelvic CT scan report noted an incidental and nonspecific finding of mild narrowing of the lumbar discs, with a very small amount of spurring." (*Id.*) As explained above, the ALJ also noted:

- an examination in July 2015 that "did not evidence any pertinent abnormalities, including normal findings regarding the neck, range of motion, stability, and muscle strength/tone" (*id.* at 22.);

- an examination in March 2016, that "documented findings of a normal gait and grossly intact strength and sensation," and "a review of symptoms at that time was also negative for back, neck or muscle pain" (*id.*);

- an examination of Plaintiff in August 2016, which "demonstrate[d] findings of no limitations in neck range of motion, no vertebral tenderness in the back, normal range of motion in the extremities, and no sensory defects. Similar to the prior examination of March 2016, neck pain was denied at the time, as was weakness" (*id.*);

- "Plaintiff's hernia appears to have resolved with treatment, at least during the period at issue, as subsequent relevant imagig and examination findings were largely unremarkable," (*id.* at 24) and other than his hernia surgery, "noted treatment during the period at issue was conservative overall." (*Id.*);

14

The reports in the medical records cited by the ALJ provide substantial evidence for her determination that Plaintiff could have performed light work with additional limitations during the relevant period.

Finally, the only medical opinion on Plaintiff's RFC in the record, from Dr. Amiri, was that Plaintiff was limited to light exertional range as of September 18, 2020, nearly three years after the date of last insured. (*Id.* at 25.) In determining the RFC during the earlier Title II period, the ALJ took note of that opinion, and found it consistent with her RFC determination, but unpersuasive as to the Title II period. (*Id.*) The ALJ noted that substantial evidence was received subsequent to the reviews by Dr. Amiri and Dr. Koch, "that adequately allow[ed] for assessment" of Plaintiff's RFC, (*Id.*), and the ALJ found that Plaintiff's RFC determination was *more limited* than Dr. Amiri's opinion. This provides further evidence in support for the ALJ's determination. *See Putman v. Comm'r of Soc. Sec.*, No. 2:20-cv-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) ("An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined.")

For these reasons, the undersigned therefore finds no error in the ALJ's conclusion that Plaintiff could have performed light work with the limitations identified by the ALJ.

## V.     DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits and that the ALJ's decision was made pursuant to proper legal standards. For the foregoing reasons, the Plaintiff's Statement of Specific Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE